in session, God Save the United States, and this Honorable Court. First case today, 2013-7104, Johnson v. Shinseki. Mr. Carpenter, you may proceed. Thank you, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Marvin Johnson. This case deals with a question of regulatory interpretation. Mr. Johnson asserts that the Veterans Court erred by deferring to the Secretary's interpretation of 38 CFR 3.321 v. 1 because the VA's interpretation of that regulation is plainly erroneous and is inconsistent with the plain meaning of the terms that are used by the VA in that regulation. The majority of the full Court below found that the VA's disability-by-disability approach was consistent with the regulatory language of 3.321 v and with the overall disability compensation scheme. The VA's disability-by-disability approach is inconsistent with the plain meaning of the phrase scheduler evaluations and disability or disabilities. A disability or disability approach to the rating schedule is contradicted by the very title of this regulation. The rule plainly is intended to address exceptional cases. Mr. Carpenter, I think your biggest hurdle is the substantial case law coming out of IR that says that we are to give substantial deference to an agency's own interpretation whenever there's any doubt. Now, I understand that your argument is that there is no doubt, but how do you overcome the sort of presumption that we are to step back and allow the agency to do their own analysis? Well, because of the particular words in this case that are used, clearly this regulation contemplates that multiple scheduler evaluations and multiple disabilities are to be considered, and they must be considered in the aggregate. And the reason that it is inconsistent is there is a specific VA regulation, 38 CFR 4.25, which accounts for the way in which the VA considers scheduler evaluations when there are multiple disabilities. So, Mr. Carpenter, if we conclude that there is some ambiguity in the regulation, then do you agree that we must defer to the VA? I don't believe it's a question of ambiguity, Your Honor. This is not a question of ambiguity. I know, but I'm just asking. Well, on that general proposition, that would be correct. I just don't believe that that's right. Even if one interpretation is maybe stronger than the other one, if we were to conclude that the VA had a weaker but still nevertheless plausible interpretation of their own regulation, then we have to go their way and the case is over? Well, I believe that that is this court's current interpretation in Sears. I do not believe that that is the correct approach, however. I believe that the overarching consideration should be the resolution of doubt in favor of the beneficiaries of this regulation and that when you have the type of situation that you've described, that that doubt should be resolved in favor of the interpretation that is more likely to benefit the intended beneficiaries. And the intended beneficiaries in this case are veterans with multiple disabilities. How do we deal with those sort of competing policy concerns? The one regarding deference to agencies generally and the other saying that where there are closed calls in a veteran's area, we are to resolve our doubts in favor of the veteran. How do those two, they come up against each other and how do we resolve that? Which one controls? Well, in my view, the Supreme Court in Henderson made it clear that you should be resolving those in favor of the veteran. Obviously, Henderson was not dealing with the type of situation that we're in here where we're dealing with a regulatory interpretation in which we have, as Judge Shin correctly points out, sort of competing interpretations, one that may be more reasonable than the other about what that plain language of the regulation means. Well, that at least had an overlay of Chevron, did it not, in terms of a statute, correct? Yes, yes, yes, it did. But I guess I'm saying that at least as I read the case law, there's the Chevron deference and then there's a separate deference that deals with the Secretary's interpretation of his own regulations. And it seems to me that in this system in particular, as opposed to a secretary generally of the executive branch who interprets his or her own regulations, that in this scheme, that that interpretation should be favored to the beneficiaries. Let me, what is your response? I mean, I think one of the Secretary's strongest responses is to your argument that because their use of plural terms, that therefore that sends a different kind of message or a clear message. The Secretary points out that even as to a single disability, there could be multiple evaluations, could there not? Well, I'm not really sure, frankly, what the Secretary means by that. There can't be multiple evaluations for a specific service-connected disability. There can, in fact, be different evaluations assigned to different disabilities. In this particular case, the disabilities are for heart disease and for each knee. And the disability amounts are exactly the same. Well, don't, for instance, say you've got a knee problem. Are there times when, in fact, you have three or four evaluations as to that same knee? Over a period of time, that evaluation can both increase and decrease, dependent upon the level of disability that's being experienced by the veteran. So then you could have multiple evaluations before you ultimately get to an external circumstance, for instance. I don't think so, Your Honor, because this provision... So possibly then if they were considering to accord justice in the exceptional case, they would be considering only the most recent evaluation? Yes, Your Honor. And that it is the most recent evaluation or evaluations that is at issue in this particular case and when there is application of the special provisions under 3.321B1. In 3.321, it says, to accord justice, therefore, to the exceptional case where the scheduler evaluations are found to be inadequate. When it says scheduler evaluations, what is it referring to? Is it referring to the actual potentially applicable diagnostic codes or is it referring to the actually applied designated diagnostic code for a given disability? I don't believe it can be the latter, Your Honor, because the obligation of the secretary is to apply that diagnostic code and assign within the diagnostic code a specific scheduler rating. So it's got to be the individual scheduler ratings that are assigned at that time. And then a determination is made under this regulation as to whether or not an exceptional case does or does not present itself. But that's where we get back to the question of the interplay between 4.25. 4.25 is a product of the VA's need to respond to when a veteran has multiple disabilities, what do we do for compensation purposes? And they've created a combined rating table. But that combined rating table is based on the 1155 mandate to set up a rating schedule based upon the objective evaluation of the average impairment of earnings for that type of disability. When we move into the extra scheduler context and away from the scheduler context, 4.25 creates a combined rating table so that we look at the aggregate of those disabilities in a mechanical way to determine the amount of compensation to be paid. So where does the 3.321 extra scheduler for the combined disability picture, in your point of view, how did that fit in with how 4.25 works? After, it's a second look. After you compute the scheduler ratings, then you have to make an examination, the VA must make an examination of the aggregate consequence on a subjective basis through the lens of the exceptional case continuum, if you will, that is created by 3.321. And that looks to the subjective circumstances, the two accord justice, because the mechanical computation under 4.25 doesn't take into account the accordance of justice or the subjective limitations of the aggregate, the collective or the combined effect of multiple service-connected disabilities, which is the case in this matter, in which what Mr. Johnson is simply asking for is for the VA to look at this, not on a disability-by-disability approach, in this case for a single need, but look to it collectively as to whether or not, once you plug these numbers into 4.25, is there an exceptional case here based upon the subjective or actual symptoms? So you have three disabilities, and they attempt to assign a code to each one, and then you take those numbers, you take those inputs, you put them into the 4.25 rule, and then after you do that, then you look to see whether to accord justice. It is necessary to consider this. This is a huge change in VA practice, though, because short of 100% disability in the TDIU, they've never combined disabilities for purposes of assessment, have they? Oh, no, certainly they have, Your Honor. They do that in 4.16 for extra scheduler total rating. The only difference here is that you're assigning a rating that could be total under this regulation, or it could be something less than that. As I understand Judge O'Malley's question, has it been ever an agency practice where 3.321 has been used in the way you want it to be used here for Johnson? Oh, to be looked at in the aggregate? Actually, I don't know, Your Honor, because quite frankly, this is not an oft-used regulation by the VA. The last numbers I heard were less than a dozen cases annually were looked at by the Director of Controversy. I thought I saw something in Chief Judge Kassel's dissenting opinion below suggesting that the VA wasn't able to identify whether or not they had any consistent practice on this. There was a question in the supplemental briefing, and that was the VA's response, that they could not produce evidence one way or the other. You're into your rebuttal time? I am. Mr. Hockey? May I please the Court? I have three themes that I hope to express this morning. They are objectivity, administrability, and redundancy. The first two themes we've talked about already. What we, I think, need to think of is not so much whether the S is in the right spot, but what is the purpose of this 3.321? What statutory construction is going to go by what you think is the purpose, not what the plain language of the statute itself or regulation in this case is? No, no. You don't think we should cast aside the plain language and just think in terms of the general purpose the VA had in mind? Not at all, Your Honor. If you want to look at the language, to accord justice to the exceptional case. Right. Now, I see the word claim all over the place in this code. I don't see the word case all that often. Wouldn't case implicate something different than claim? It could. It could? But let me respond to it. Isn't there a canon of construction that different words in the same statute ought to be different? I think, as the Court has already alluded, claims and case is used sometimes interchangeably within the VA system. But let me actually respond to your usage in your beginning of the question. To accord justice, therefore, to the exceptional case. I'd like to focus on the word therefore for a moment. Because therefore tends to tie that sentence, which I think we all agree is for purposes of trying to figure out whether it applies to individual disabilities or collectively, therefore ties that sentence to the preceding sentence. And I think this is important to understand how 3.321 is used in the veteran scheme. The first sentence says, Ratings shall be based as far as practicable upon the average impairments of burning capacity with the additional proviso that the Secretary shall from time to time readjust the schedule of ratings in accordance with experience. What that says is, and a long time ago, in fact, earlier this week, I had occasion to look at the 1919 and 1921 rating schedules. The Secretary came up with rating schedules to try to identify how they were going to award compensation for various disabilities. And as you know, as the Court, I'm sure, is aware, they've looked at the rating schedule and they see there's sort of subcategories pursuant to congressional direction in 1155 that will provide ratings for 10, 20, compensable ratings for 10, 20 up to 100%, but no more pursuant to the language of 1155. And this is the schedule that the VA uses when they try to figure out whether somebody gets a 20 or a 40. They look at the disability. They look at how it's affected the person. And if you look at the rating schedule, it kind of spells out examples of, well, if you meet one kind of criteria of this disability, maybe you get a 10% rating. But if you're demonstrating two sort of symptoms, maybe you get a 20% rating. It kind of varies by disability. What the Secretary does in 3.321 is to announce to everyone that we've done the best we can in creating a rating schedule that deals with the average impairment. And this is where objectivity comes in. What the whole rating schedule is designed to do is to get away from subjective determinations, to get away from unlimited discretionary decision-making by rating officials all over the United States, which would potentially lead to all kinds of decisions which could be challenged. Is there a punchline coming soon? Well, when you have a rating schedule which says that it will be adjusted from time to time, then it says to accord justice, therefore, to the exceptional case. What the rest of the 3.321B refers to are those situations where it's actually the individual's case who rises to the attention of the Secretary the fact that the rating schedule isn't working. I don't understand how anything you're saying has anything at all to do with the question in front of us. Was aggregate or individual? Well, because... You're arguing policy. But if you want to argue policy, we could go all over this. We could say it's supposed to be veteran-friendly. We could say it makes sense. I mean, it's kind of downright silly to say that we never look at a combined effect of multiple disabilities on someone unless it's 100%. That actually, as a matter of policy, doesn't make sense. So if you want to talk policy, we can talk policy. I think we ought to talk about the law. I respectfully think that what I'm saying here is by looking at the first sentence which says that the rating schedule is designed to apply objectively and that where it's not working for somebody, then we will adjust it. It fits within the overall question that the Court faces here is does 3.321 apply to disabilities? In other words, the way it should work is when you have a disability and you come in and you apply the rating schedule and for some reason, it's not working. You're experiencing more unemployability or you're experiencing more frequent hospitalizations than your 20 or 30 or whatever percent rating you would get under the rating schedule. Then you go to 3.321 and say, look, the way the rating schedule was created, the way that the drafters approached how they were dividing up the ratings, isn't working for me. My true condition isn't being reflected in that rating schedule. I want an extra scheduler evaluation and that's what 3.321 is designed to do and it's done on a disability by disability basis. Can you respond to the fact that you couldn't even establish for the Veterans Court that you have any consistent policy or practice with respect to how you use it? I mean, you're so clear on how you think this is supposed to work and yet, you don't have any history. I think the concern there was probably... There may have been... I don't think the Secretary can stand here today and say nobody in the regional office has ever applied it in the way suggested by Mr. Johnson. But I can say that had they done so, it would have been against the intent of the VA. I think by standing here and taking the position that we're taking today, that this is our position, we are in no uncertain terms suggesting to the court that 3.321 is used on a disability by disability basis. Then why doesn't the rules just say disability? It says disability for disabilities. When I look at, I guess, the kind of lower bottom portion of this rule, it says an extra scheduler evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability for disabilities. Why doesn't that just plainly tell me a veteran can get an extra scheduler evaluation due exclusively to a service-connected disability? Alternatively, the rule contemplates that an extra scheduler evaluation can be granted to a veteran due exclusively to the service-connected disability. So when someone comes in and the first thing that happens is they're evaluated by a doctor and the doctor determines that they have a disability and that these are the problems that that person has associated with that disability, then it's up to the rating official to look at the rating schedule to determine what's the proper diagnostic code that I apply to that. They look and there's all kinds of, in 4.718 through 4.150, there's all kinds of diagnostic codes that are pretty specific in how they apply to particular injuries or diseases. He looks at the symptomatology of that individual. He identifies which one of those ratings, be it 30% or 40%, is sufficient. Then, if for some reason it's suggested by the rating schedule language that it's not really totally compensating this particular veteran because of the effect of that disability on that veteran, he can then look to 3.321. Maybe I'm not being patient enough. I'm asking a question about grammar. No, I know, and I'm about to answer that question. You can get an extra scheduler evaluation due to service-connected disability. That's how I read that sentence right now. Why am I wrong? Because, as we say in our briefs, we don't disagree that you can have more than one scheduler evaluation because most claimants have more than one claim for disability. But you can also get one extra scheduler evaluation based on service-connected disability. And so that's where, I mean, I'm not standing here and suggesting that by looking at this language, within the four corners of this language, Mr. Johnson's interpretation is unreasonable. We're not suggesting that. What we're suggesting is... But the problem is we're finding yours unreasonable because you can't explain away a word in the statute, which is a regulation, which is what you seem to want to do. That's the problem. I don't think, no, it's not because... Then tell me how to read the word disabilities. You've given me no way to give meaning to it. You want to consider it superfluously for all that. Here's an example, Your Honor. Let's just say that the VA really intend... Well, first of all, let's answer Judge Chen's initial question, which is the way it works is when someone comes in with more than one disability, what the regulation says is you can have this thing apply for each of those disabilities. So that's why it says disabilities. If I come in with four disabilities and the rating schedule is insufficient with all four of them, I'm entitled to have consideration for extra schedule for all four of those disabilities. Not the combined effect of them, but individually, all four of my disabilities can be considered. That's what 3.321 is designed to do. Right, but the rule could have easily just said disability, full stop, sentence, end, period. It could have. And then you would just use that rule iteratively over and over again. I got a bad knee. I got a bum knee. Let's see if we get an extra scheduler for the bum knee. And you could go in for each one. There's nothing that would have stopped you under that language. And it could have said and, or. And if it had said and, or, we wouldn't be here today. Because if it said and, or, then that plainly covers combined effect. But it doesn't say and, or. It just says or. But it does refer to consideration of a disability picture. Which the secretary has explained in our briefs. And we have used that term over and over again to describe the situation between that particular veteran and their particular disability. So, yes, that's a word that in general parlance may be applied in one manner. But certainly the secretary has already determined in his regulations. We mentioned 4.7, 4.71. There are other places within the rating schedule that use disability pictures. 4.7, a different context though. You were trying to really figure out which of two evaluations should be best applied for a particular disability. So, I mean, 4.7 wasn't really trying to figure out what does disability picture mean. But it's being used in the sense that we're suggesting it should be used in 3.321. So, for purposes of determining whether our interpretation is reasonable, it's, I think, a fair point. It certainly doesn't knock out your interpretation. But I don't see how it knocks out Mr. Carpenter's interpretation. I'm not necessarily suggesting that it knocks out Mr. Carpenter's interpretation. I think other things knock out Mr. Carpenter's interpretation. I think two main things, going to the, well, objectivity and administrability. As Mr., and I don't like to use counsel's words, but he did suggest that what he really wants is an introduction of a more subjective review that 4.25 doesn't provide. But I think that goes against the whole point of ratings. We don't want to encourage... I don't understand what you mean by the word subjective. Okay, so right now, 4.25, which is the provision, I think, Dr. Malley asked about earlier, about combined ratings. So when somebody comes in with multiple disabilities and they get rated, say, I got a 20% for this thing, I got a 40% for that thing. Putting them into that rating category is subjective. I mean, medicine is not a perfect science. And we've got people who are not necessarily medical experts who are making those determinations. So how is that not subjective where they show up in the rating schedule to begin with? You act like the rating schedule is a mathematical formula that you can't screw up on. No, I'm not suggesting that it's totally objective. I'm suggesting that the interpretation of the rating schedule application process has to be done taking into account that if you look at the entire scheme, the goal is objectivity. Average annual... But then there are those places where even trying as hard as you might to be objective, you're not doing justice to the veterans. And we've got a veteran-friendly system here. And you're saying that, no, we can never try to do justice by doing something veteran-friendly if it doesn't fit into what I think comes out to be some kind of mathematical formula. I don't think that's what we're saying. I think, though, that what we're saying is... So to answer the question you asked earlier about how do you deal with combined situations, the regulation at 4.25 tells you, and there really is no subjectivity about that. It is mathematical. So what... And the way that the regulation... Obviously not. This provision is to address the circumstances where all of that stuff doesn't work. So tell me, why is it... How is the sky going to fall if this provision is read as, I think it clearly is on its face, to include multiple disabilities considered in the aggregate? So how is the sky going to fall? Tell me, what other things are going to happen? Well, first of all, I don't think the sky necessarily will fall because, as we indicated in footnote 5 of our brief, we're going to fix this. In fact, we've already done that. To make it more veteran unfriendly. Yeah, why? Why are you going to fix this? Because we're going to make it consistent with our interpretation, and it has always been. I mean, the... Why? Why? Mr. Hockey, stand here and tell me why a veteran with multiple disabilities ought not to have the right in a certain set of circumstances to have them considered in aggregate under this provision. Why? What is the basis for saying we would consider an individual disability or consider them in series, but Lord knows we're not going to take them together even though one poor veteran has a whole bunch of disabilities all at once. Why? We have a regulation that... What could possibly be the motivation? We have a regulation that deals with that scenario. Only if it's 100%. That's correct. An objective way where somebody can come in and demonstrate, yes, I'm unemployable. But you also have tons of regulations that deal with how to handle individual disabilities, but yet you found the need to come along with this one because it allows for scenarios where the regular regulations might not fill the whole picture in. So why would you reject the idea that that same notion can happen with regard to an aggregate of disabilities? I would respectfully submit, Your Honor, that maybe the Secretary might consider that someday, but that's not what we've done. What we've done is approached it in a different way to make it more administrability. This is where that comes in. Why? How many cases are there that are implicated by this? Well, I think according to testimony before the Senate or Congress recently, almost everybody who submitted a claim recently has more than one claim disability. So what the court is suggesting is... But all the people have individual disabilities. Are they all bringing requests under this provision? Well, typically, whenever you file a claim, you request extra skeletal relief because you're always seeking the most relief you can. Okay, so people are already requesting it anyway. But it's not being applied in the way the court's suggesting it should be applied. But you said you don't know that. No, no, no. You told the Veterans Court you couldn't say it. You don't know the answer. I think the answer is that if people are following the direction of the Secretary, they are not applying it in the manner that Mr. Johnson suggests. I think what the Secretary was trying to avoid getting into with respect to the Veterans Court was that situation where somebody was doing it when they weren't supposed to be doing it. But clearly, the manual that we cite in our provision, which is what the rating officers are supposed to follow, says it's applied on a disability-by-disability basis. And frankly, in all my years of representing, this is the first time I think this argument has been made about this regulation. So one would have thought that had it been regularly being applied the other way and somebody did it wrong, somebody would have brought it to the attention of the Veterans Court or this court earlier than today. How many cases have you had where you've personally been involved in 3.32? Personally, myself, not very many. So your representation just now about how... Where the issue was 3.321, not very many. Where 3.321 had been requested as part of the process leading to the case, many. Yes, but if 3.321 is requested all the time, what difference does it make to just say, okay, look at them individually, then also look at them in aggregate? How much more of a burden does that create? It's inconsistent with the regulation. Is that not what I asked you? I don't know what the burden... I would imagine, yes. Having somebody, the way it works, when you apply the rating schedule and you figure... Then you apply 3.321 per disability. Then you go to 4.25 and you come up with a combined overall rating. And then what the court is suggesting, Mr. Johnson is suggesting, is when we go back to 3.321 again and we apply it a second time, now we apply it to the combined effect. That is not being done. All the time in the social security system. I mean, these are individuals who served their country and you're trying to treat them like pegs that you have to stick in a board. Rather than say, let's look at the total effect on them and maybe they're not completely unemployable, but maybe these combined problems would give them a combined higher disability rating. I'm suggesting, Your Honor, that the scheme has been written as we understand it. And it was done to make it something that the agency could administer and not lead to arbitrary decision making, which would then not favor any veteran. Now, do you agree that the statute would not prohibit consideration as Mr. Carpenter would request that it occur under this provision? I think that by limiting... No, I think that this regulation when read consistent with the whole rating schedule approach can only be read one way, frankly. If you're talking about the statute, is there anything in the statute that would prohibit us from reading this regulation the way Mr. Carpenter argued? And, with all due respect, which statute? Are we talking about this regulation? The regulation has to be effective. 1155? Right. The regulation can't exist in a vacuum. It only exists because the VA's been given the authority to regulate consistent with the statutory scheme. Okay. So, is there anything in the statutory scheme that would prohibit us from reading the regulation as Mr. Carpenter does? In this manner, I would suggest that there is. So, the history, obviously, is the rating schedule existed long before Congress got involved in codifying things. But, in 1155, which, according to the code, is now what the Secretary would refer to as the authorization statute. 1155 was issued in an era where the Secretary had used a rating schedule or had used rating schedules, which had percentages like 2%, 4%, 6%, 8%. Basically, they were trying to cover every possible permutation. We're way over time. I understand, but I just want to answer. I was going to wrap it up, but not another long... In 1155, Congress says, the schedule shall be constructed so as to provide 10 grades of disability and no more upon which payments of compensation shall be faced. And they spelled them out. 10, 20, 30, up to 100. So, I would suggest to the Court that that was Congress saying, we want an administrable schedule, we want it objective, and we don't want it overly complicated. They also said that it should relate not just to injuries, but combination of injuries. Yes, and that's where we have dealt with that through our 4.16. So, only in one extreme circumstance do you consider combination of injuries? The Secretary has interpreted this instruction to mean that we need to find out how can we deal with the multiple effect. And the way the Secretary has found, the only practical way is to say, where there's evidence of total unemployability, we will find that. Is there a statement anywhere in the manual or some proclamation where the Secretary has said that's the only way we can administer these sort of combination injury inquiries is through a TDIU? I'm not sure how... I mean, the manual instructs the rating official as to how to use 3.321 and 4.16. Disability or disabilities? Well, I think though, when you look at the manual, it instructs the individual... The 3.321 is applied on disability by disability and then it also instructs the individual to take into account 4.16 TDIU award. And they kind of do it in the same area because they're both extra-scheduled provisions. Am I wrong in remembering that the manual refers to disabilities? I... I can look it up. Yeah, I mean, it may... Thank you, Mr. Coffey. We need to move on. Mr. Carpenter, do you have anything you need to add? Actually, I don't, Your Honor, unless there's any questions from the panel. No, thanks. Thank you very much. Case is taken under submission. Next case on our docket, 2013-1474, Powertrain Components v. United States.